UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TIMOTHY D. S.,[1] | : | Case No. 3:21-cv-278 |
| Plaintiff, | : | |
| vs. | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff Timothy D. S., brings this case challenging the Social Security Administration's denial of his application for a period of disability and Disability Insurance Benefits. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

**I.   Background**

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on March 7, 2019, alleging disability due to several impairments, including epilepsy, Bi-polar Disorder, tremor in his hands, and elbow tendonitis. (Doc. #7-6, *PageID* #200). After Plaintiff's application was denied initially and upon reconsideration, he requested and received a telephonic hearing before Administrative Law Judge (ALJ) Gregory G. Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1:  Plaintiff has not engaged in substantial gainful activity since September 21, 2018, the alleged onset date.

Step 2:  He has the following severe impairments: degenerative disc disease of the cervical spine; a seizure disorder; and bipolar disorder.

Step 3:  He does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:  His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consist of a "light work [] except: (1) no climbing of ladders, ropes, or scaffolds; (2) no work around hazards, such as unprotected heights or dangerous machinery; (3) no driving of automotive equipment; (4) occasional use of the left upper extremity for overhead reaching; (5) limited to performing unskilled, simple, and repetitive tasks; (6) occasional, superficial contact with coworkers and supervisors, where superficial contact is defined as able to receive simple instructions, ask simple questions, and receive performance appraisals, but as unable to engage in more complex social interactions, such as persuading other people or resolving interpersonal conflicts; (7) no public contact; (8) no fast-paced production work or jobs that involve strict production quotas; and (9)

|  |  |
|---|---|
|  | limited to performing jobs that involve very little, if any, change in the job duties or the work routine from one day to the next." |
| Step 4: | He is unable to perform his past relevant work as a general laborer. |
| Step 5: | Considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. |

(Doc. #7-2, *PageID* #s 30-37). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability since September 21, 2018. *Id.* at 37.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 31-35), Plaintiff's Statement of Errors (Doc. #8), and the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

In this case, Plaintiff asserts one statement of error, which is that "the ALJ reversibly erred in evaluating the opinion of longtime treating psychiatrist Dr. Lunderman." (Doc. #8, *PageID* #525). In response, the Commissioner maintains that the ALJ evaluated Dr. Lunderman's opinion consistent with the regulations and that his decision is supported by substantial evidence. (Doc. #9, *PageID* #s 540-49).

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. Those standards recently changed for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 404.1527. Because Plaintiff's claim for disability was filed in March 2019, the Social Security Administration's new regulations for evaluating medical opinion evidence apply to this case.

Previously, the Social Security Administration followed the "treating physician rule," which required an ALJ to give "controlling weight" to a treating source's opinion so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

However, the new regulations changed this standard for applications filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …." § 404.1520c(a). Instead, the new regulations direct the ALJ to evaluate the persuasiveness of each medical opinion by considering the five following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." § 404.1520c(c). Further, because the regulations consider supportability and consistency the "most important factors," ALJs are obligated to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions," while they "may, but are not required to, explain how [they] considered" the remaining factors. § 404.1520c(b)(2).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." § 404.1520c(c)(1). Similarly, with respect to the consistency factor, "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ...." § 404.1520c(c)(2).

Thus, while these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No.

5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)).

Here, Plaintiff alleges that the ALJ erred in his assessment of Plaintiff's treating psychiatrist, Jack Lunderman, M.D. (Doc. #8, *PageID* #s 529-31). In addition to the medical records submitted from his treatment of Plaintiff, (Doc. #7, *PageID* #s 342-76, 434-41, 517-21, 522-24), Dr. Lunderman completed a statement on behalf of the state agency in early 2019, noting that he had been treating Plaintiff every six months since 2009. (Doc. #7-7, *PageID* #s 373-75). In his report, Dr. Lunderman described Plaintiff as having mood instability with excessive irritability, including a history of aggressive behaviors, marked anxiety, excessive worry, variable sleep disturbance, insomnia, and religious preoccupation. *Id.* at 374. Dr. Lunderman noted that Plaintiff no longer engaged in hobbies or activities and that he has tried to maintain employment but that his mood instability with marked anxiety and excessive irritability has negatively impacted his ability to maintain such employment. *Id.* at 375. He further opined that Plaintiff would not be able to function reliably in the workplace setting because of his Bipolar Disorder and seizures and that his prognosis was poor in that he was not anticipated to return to the workplace in the near future, if ever. *Id.*

Dr. Lunderman also completed a "Mental Impairment Questionnaire" in May 2020. (Doc. #7-7, *PageID* #s 502-04). At that time, Dr. Lunderman indicated that Plaintiff was diagnosed with

Bipolar Disorder and had a history of a seizure disorder. *Id.* at 502. As for Plaintiff's signs and symptoms, Dr. Lunderman reported that Plaintiff had poor memory; oddities of thought; perception speech; behavior; perceptual disturbances; sleep disturbance; mood disturbances; emotional lability; blunt, flat or inappropriate affect; decreased energy; generalized persistent anxiety; difficulty thinking or concentrating; hostility and irritability. *Id.* He also noted that Plaintiff had "slowed" thinking at times, limited stress tolerance, and a history of religious preoccupations and aggression. *Id.* Dr. Lunderman also indicated that Plaintiff's psychiatric condition exacerbates his experience of pain or other physical symptoms, explaining that Plaintiff had a history of disease process in two body systems, which each negatively impacted the other and exacerbated symptoms unpredictably. *Id.* He opined that Plaintiff's physical and psychological problems would result in him being off-task twenty percent or more of the work week and absent more than three times a month. *Id.* As for Plaintiff's ability to understand, remember, or apply, Dr. Lunderman stated that he was able to concentrate unless/until his symptoms exacerbate. *Id.* at 503. He further opined that Plaintiff's ability to concentrate, persist, or maintain pace was, at least, markedly impaired, and that his ability to adapt or manage himself was moderately to markedly impaired. *Id.*

When asked about Plaintiff's overall ability to learn, recall, or use information to perform work activities, Dr. Lunderman indicated that Plaintiff was moderately impaired, unless his symptoms worsen, which happens intermittently and unpredictably, at which time he becomes psychotic and angry. *Id.* at 504. Similarly, Dr. Lunderman opined that Plaintiff was, at least, markedly impaired in his overall abilities to relate to and work with supervisors, co-workers, and

7

the public; to focus attention on work activities and to stay on task at a sustained rate; and to regulate his emotions, control his behavior, and maintain well-being in a work setting. *Id*. Here, Dr. Lunderman again noted that Plaintiff had a limited stress tolerance and would become psychotic on an intermittent and unpredictable basis. *Id*. However, when asked whether Plaintiff would be able to perform regular, full-time, competitive wok on a sustained basis without missing work more than two times per month, being off-task more than fifteen percent of the workday, or needing additional breaks due to his impairments, Dr. Lunderman indicated "Yes." *Id*.

ALJ Kenyon was not persuaded by Dr. Lunderman's opinion noting that "Dr. Lunderman's treatment notes reveal that [Plaintiff]'s mood is generally stable, and while he has some reduced tolerance in handling stress, his findings are mostly normal, including with respect to concentration." (Doc. #7-2, *PageID* #35). Here, the ALJ noted that Plaintiff's performance on a WAIS-IV examination indicated that Plaintiff had no more than moderate limitations, which ALJ Kenyon pointed out was consistent with the recent opinion of Juliette Saviscus, Ph.D., the state agency psychologist. *Id*. (citing Doc. #7-3, *PageID* #s 89-104). According to ALJ Kenyon, Dr. Lunderman's opinion was "extreme compared to the objective evidence, including his own treatment notes and other opinions[,] and, therefore, "not persuasive." *Id*.

ALJ Kenyon's explanation for finding Dr. Lunderman's opinion unpersuasive is clearly articulated and supported by substantial evidence. The ALJ specifically discussed the two most important factors listed in 20 C.F.R. § 404.1520c—supportability and consistency. ALJ Kenyon explained that Dr. Lunderman opined that Plaintiff had marked to extreme limitations in several

8

areas of functioning, but that this opinion was not supported by clinical examination findings, including Dr. Lunderman's own treatment notes.

The record substantially supports ALJ Kenyon's supportability analysis. For example, despite Dr. Lunderman opining that Plaintiff had marked to extreme limitations in his ability to concentrate, persist, and maintain pace, Dr. Lunderman's own treatment notes consistently report that Plaintiff exhibited normal concentration. (Doc. #7-7, *PageID* #s 342-58, 360-70, 434, 436, 519, 521-24). Similarly, while Dr. Lunderman found that Plaintiff was markedly to extremely impaired in his overall ability to regulate his emotions, control his behavior, and maintain well-being in a work setting, his treatment notes show that Plaintiff routinely presented with "stable" mood and "stable" affect. *Id.* at 343, 345, 346, 348-50, 352, 354-58, 360-68, 370, 434, 519-22, 524. Here, Plaintiff criticizes ALJ Kenyon for considering these reports of Plaintiff's "stability," arguing that "medical 'stability' does not mean that the patient's symptoms have resolved or disappeared. Rather, stable is defined as 'not readily subject to change.'" (Doc. #8, *PageID* #530). Contrary to Plaintiff's contention, ALJ Kenyon's reliance on Dr. Lunderman's report of mood and affect stability is, in this case, reasonable. Indeed, as pointed out by the Commissioner, Dr. Lunderman repeatedly reported Plaintiff's mental status on the same check-box form, in which "mood" could be characterized as "stable," "depressed," "euthymic," or "other" and affect could be described as "stable," "anxious," "irritable," "blunted," "flat," labile," or "other." (*See e.g.,* Doc. #7-3, *PageID* #343). As such, Dr. Lunderman could have used any of the other options or provided his own description of Plaintiff's mood or affect instead of choosing "stable" to describe Plaintiff's mood and affect. In fact, on a few occasions, Dr. Lunderman did note that Plaintiff's

mood was "depressed" and that his affect was "anxious." (*See e.g.*, Doc. #7-7, *PageID* #342). However, as noted by the ALJ, on the vast majority of visits, Dr. Lunderman indicated that Plaintiff had stable mood and stable affect, which was, in turn, reasonable for ALJ to consider in his supportability analysis of Dr. Lunderman's opinion.

ALJ Kenyon also appropriately considered Dr. Lunderman's opinion with respect to the consistency factor. Here, the ALJ explained that Dr. Lunderman's opinion that Plaintiff had marked to extreme limitations was inconsistent with other evidence of record, including other medical opinions and Plaintiff's performance on a WAIS-IV examination, which indicated that Plaintiff had no more than moderate limitations. The record also substantially supports ALJ's consistency analysis.

Specifically, although Dr. Lunderman opined that Plaintiff had marked to extreme limitations in his ability to concentrate, persist, and maintain pace, ALJ Kenyon found that this was inconsistent with record evidence demonstrating that Plaintiff had a moderate limitation in this area. ALJ Kenyon explained why he found that Plaintiff only had moderate limitations in this area as follows:

> In concentrating, persisting, or maintaining pace, [Plaintiff] has a moderate limitation. [Plaintiff] alleged difficulty with concentration, but not with completing tasks. [Plaintiff] alleged that he can only pay attention for five minutes at one time, but also alleged that he watches television all day, and he can pay bills, drive, and shop in grocery stores. [Plaintiff] preaches at church, but reported having difficulty with recalling the words he wants to say. [Plaintiff's] objective treatment notes consistently show that [Plaintiff] has normal concentration. Other notes show that [Plaintiff] has fair concentration. [Plaintiff's] physician indicated that [Plaintiff] could not work "as a machinist" due to his concentration difficulties, but not that he could not work. [Plaintiff's] WAIS-IV examination revealed that [Plaintiff's] simple attention and concentration is average. The recent State Agency

>psychologist opinion of record shows that [Plaintiff] has moderate limitations in this area. Therefore, [Plaintiff] has no more than moderate limitations in this area.

(Doc. #7-2, *PageID* #s 31-32) (record citations omitted). Substantial evidence supports ALJ Kenyon's determination. As the ALJ explained, Plaintiff underwent WAIS-IV testing, which revealed a full-scale IQ of 83, working memory score of 83 and processing speed of 84. (Doc. #7-7, *PageID* #483). The physician who administered the WAIS-IV testing found that these scores fall on the low side of average range and that Plaintiff's memory testing showed that he had no more than a moderate limitation. *Id.* at 483-84. As ALJ Kenyon also noted, Juliette Savitscus, Ph.D., the state agency psychologist, reviewed Plaintiff's mental health record in September 2019 and determined that he had no more than moderate limitations in all areas, including: understanding, remembering, and or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Doc. #7-3, *PageID* #s 95-96). Accordingly, it was reasonable for ALJ Kenyon to find that Dr. Lunderman's limitations were inconsistent with the other evidence of record.

In short, ALJ Kenyon clearly satisfied the articulation requirements and was not required to discuss any other factor. *See* 20 C.F.R. § 404.1520c(b)(2) (requiring only that the ALJ articulate how he considered the supportability and consistency factors). Further, the ALJ's analysis of Dr. Lunderman's opinion allowed the Court to conduct a review of the decision because he built a logical bridge between the evidence and his conclusion. Fundamentally, Plaintiff disagrees with how the ALJ weighed the evidence. However, the ALJ is charged with resolving conflicts in the medical evidence, *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), and the law prohibits the Court from reweighing the evidence and substituting its judgment for the ALJ's. *See Reynolds v.*

*Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

For all the foregoing reasons, the Court finds that the ALJ properly considered and explained the reasons for finding Dr. Lunderman's opinion unpersuasive. Moreover, the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's assignment of error is without merit.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's Statement of Errors (Doc. #8) is **DENIED;**

2. The Commissioner's non-disability determination be **AFFIRMED**; and

3. The case be terminated on the docket of this Court.

December 20, 2022

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge